NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SEOUL SEMICONDUCTOR CO., LTD., SEOUL VIOSYS CO., LTD.,**
*Plaintiffs*

**v.**

**FINELITE, INC.,**
*Defendant/Third Party Plaintiff-Appellant*

**v.**

**SAMSUNG SEMICONDUCTOR, INC.,**
*Third-Party Defendant-Appellee*

---

2025-1712

---

Appeal from the United States District Court for the Northern District of California in No. 3:22-cv-02869-TLT, Judge Trina L. Thompson.

---

Decided: May 13, 2026

---

THOMAS J. RECHEN, McCarter & English, LLP, Hartford, CT, argued for defendant/third party plaintiff-appellant. Also represented by MARK D. GIARRATANA.

ALI REZA SHARIFAHMADIAN, Arnold & Porter Kaye Scholer LLP, Washington, DC, argued for third-party defendant-appellee. Also represented by JIN-SUK PARK; SEAN M. SELEGUE, DOUGLAS WINTHROP, San Francisco, CA; BRIAN WILLIAMS, Denver, CO.

---

Before LOURIE, DYK, and TARANTO, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Finelite, Inc. ("Finelite") appeals from a final decision of the United States District Court for the Northern District of California dismissing its breach of contract, breach of warranty, and declaratory judgment claims against Samsung Semiconductor, Inc. ("Samsung"). *See Seoul Semiconductor Co. v. Finelite, Inc.*, 694 F. Supp. 3d 1199 (N.D. Cal. 2023) ("*Decision*"). For the following reasons, we *affirm*.

BACKGROUND

Finelite manufactures LED-based lighting products and purchases LED chips from Samsung for use in those products. At the outset of their business relationship, the parties entered into an agreement governing their transactions (the "2012 Agreement"). *See* ER-139–43. The 2012 Agreement is five pages long and consists of three components: (1) a credit application and agreement (pgs. 1–2); (2) a financial authorization form (pg. 3), and (3) a contract of sale (pgs. 4–5). *Id.*

The first component's credit agreement authorized Samsung to contact Finelite's credit references and exchange certain information concerning Finelite's business and credit history. *Id.* at ER-140. It also specified that a "monthly service charge" could be assessed to Finelite accounts not paid on time, and that all "[g]oods are sold C.I.P. [Samsung's] designated shipping point unless otherwise

specified."[1] *Id.* Finally, and as relevant on appeal, the credit agreement concluded with the following statement:

> Applicant understands and agrees to Samsung Semiconductor, Inc.'s terms of sale (attached), to pay service charges assessed and to pay reasonable attorneys [sic] fees in the event of default.

*Id.* (hereinafter referred to as "the disputed statement"). The parties agreed that the disputed statement's reference to "terms of sale (attached)" generally incorporated at least part of the 2012 Agreement's third component, entitled "Samsung Semiconductor, Inc. Contract of Sale" ("Contract of Sale") at pages 4 to 5. *Decision*, 694 F.Supp.3d at 1204. The Contract of Sale includes various provisions that cover the application of terms, pricing, shipping, indemnification, and modification.[2] *Id.* Specifically, the Contract of Sale limited Samsung's indemnification obligations to "the jurisdiction where title passes from Samsung to Customer." ER-143.

Following the execution of the 2012 Agreement, Finelite began purchasing LED chips from Samsung. *Decision*, 694 F.Supp.3d at 1204. Specifically, Finelite purchased chips from Samsung on at least four different occasions between 2018 and 2021. *Id.* For those purchases, Finelite sent a purchase order (collectively, the "Purchase Orders") to Samsung by email, and each email included a link to Finelite's terms and conditions, which contained an indemnity provision that did not limit Samsung's

---

1 Carriage and insurance paid to ("C.I.P.") is a global trade term by which a seller pays freight and insurance costs to transport goods from its factory to a carrier designated by the seller.

2 The second component of the 2012 Agreement included a financial authorization form. *Decision*, 694 F.Supp.3d at 1204.

responsibilities to any particular jurisdiction. *Id.* Samsung sent acknowledgments in return. *Id.* For all four Purchase Orders, the C.I.P. location was Hong Kong, meaning title to the chips passed in Hong Kong. *Id.* at 1204–05. Finelite never disputed that the C.I.P. location was Hong Kong. *Id.* at 1215. The scope of the Contract of Sale's incorporation into the 2012 Agreement is therefore important because the Contract of Sale limits Samsung's indemnification obligations to only the jurisdiction where title passed from Samsung to Finelite (*i.e.*, Hong Kong), yet the infringement claims that are relevant here, as discussed below, arose in the United States. *Id.* at 1205.

In May 2022, Seoul Semiconductor and Seoul Viosys (collectively, "Seoul") filed a patent infringement action in the United States District Court for the Northern District of California against Finelite, alleging that Finelite's LED products infringe fourteen of their U.S. patents relating to LEDs and LED lighting technology. *Id.* In response, Finelite filed a third-party complaint in November 2022 against Samsung, asserting claims for breach of contract, breach of the California Uniform Commercial Code ("UCC"), and declaratory judgment. *Id.* In particular, Finelite alleged that Samsung supplied the LED chips underlying Seoul's infringement claims and asserted that Samsung was responsible for indemnifying Finelite in Seoul's infringement action. *Id.* Samsung disagreed and contended that the 2012 Agreement governs such that Samsung is not required to indemnify Finelite for Seoul's infringement claims. *Id.* Finelite, opposing that view, asserted that later Purchase Orders imposed an indemnification obligation. *Id.*

Both parties moved for summary judgment in mid-2023. *Id.* Reading the agreement as a whole, the district court determined that the 2012 Agreement and its disputed statement are unambiguous. *See id.* at 1209–11. Specifically, it explained that the "terms of sale (attached)" in the disputed statement on page 2 unambiguously

referenced and incorporated the Contract of Sale on pages 4 and 5. *Id.* at 1210. It reasoned that although the Contract of Sale on pages 4 and 5 is not labeled verbatim as "terms of sale," the Contract of Sale is nonetheless (1) described at the top of page 4 as the "Terms and Conditions" governing the purchases and (2) sequentially paginated as part of a single five-page document. *Id.* at 1210. Thus, the court determined the 2012 Agreement consists of pages 1 to 5 in their entirety, at least in part because the disputed term incorporated the entire Contract of Sale. *Id.*

The district court rejected Finelite's narrower reading of the disputed statement as inconsistent with the structure and content of the agreement as a whole, particularly because the specific items Finelite sought to isolate from the disputed statement (*i.e.*, service charges and attorney fees) do not clearly map onto discrete sections of the Contract of Sale on pages 4 and 5. *Id.* In other words, without a clear mapping of those terms to particular sections on pages 4 and 5, it was not persuasive to the court to contend those terms in the disputed statement operated as limited incorporations of only certain material on pages 4 and 5 to the exclusion of all other terms and conditions on those pages. *Id.*

The district court further reasoned that Finelite's interpretation would improperly render large portions of the agreement superfluous, contrary to California contract law requiring that effect be given to all provisions, and that isolating a single clause divorced from the full contract was doctrinally improper. *Id.* (relying on *Flores v. Barr*, 934 F.3d 910, 915 (9th Cir. 2019)). It also rejected Finelite's reliance on extrinsic evidence (*i.e.*, later conduct by the parties when exchanging Purchase Orders and acknowledgments), explaining that parol evidence cannot be used to contradict clear and unambiguous contractual language, nor does the absence of repeated references to the agreement in later transactions undermine its continuing effect. *Id.* at 1211. Accordingly, the district court

concluded that the entire Contract of Sale was incorporated into the 2012 Agreement. *Id.* As a result, it granted Samsing's motion on summary judgment for no breach of contract because the 2012 Agreement's indemnification clause applies. *Id.* at 1215. For similar reasons, the district court also granted Samsung's motions for no breach of warranty under the UCC and for denial of Finelite's declaratory judgment claim.

Finelite timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).[3]

## DISCUSSION

The issue before us is whether the 2012 Agreement incorporates the entirety of the Contract of Sale as opposed to only certain specified terms. Finelite argues that applying well-established rules of contract interpretation makes clear that the last statement on page 2 of the 2012 Agreement (*i.e.*, the disputed statement) incorporates only certain terms of the Contract of Sale on pages 4 and 5. We disagree.

"Contract interpretation—including whether the contract is ambiguous—is a question of law, which we answer de novo." *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1341 (Fed. Cir. 2025) (en banc), *cert. denied*, 146 S. Ct. 333 (2025). Because contract interpretation is a matter of state

---

[3] Samsung moved to transfer the appeal from the Ninth Circuit to the Federal Circuit, and the Ninth Circuit ultimately agreed and transferred the case "conclud[ing] that the Federal Circuit has exclusive appellate jurisdiction over this case under 28 U.S.C. § 1295(a)(1), and that transfer of the appeal is in the interest of justice under 28 U.S.C. § 1631." *See* ECF No. 1 at 2–3. Because the briefing and appendices are in conformance with Ninth Circuit requirements, our cites to the appendix are to what the Ninth Circuit refers to as Excerpts of Record ("ER").

law and the parties and district court agree that California law governs the contract, we apply California law in interpreting the 2012 Agreement. *See Parental Guide of Texas, Inc. v. Thomson, Inc.*, 446 F.3d 1265, 1269 (Fed. Cir. 2006). Under California law, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. And when a contract is reduced to writing, "the intention of the parties is to be ascertained from the writing alone, if possible." *Id.* § 1639. Moreover, "[a] contract provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable," but the provision "cannot be found to be ambiguous in the abstract." *Saheli v. White Mem'l Med. Ctr.*, 21 Cal. App. 5th 308, 317–18 (2018) (cleaned up).

We do not find the 2012 Agreement to be ambiguous. First, the 2012 Agreement's structure makes clear that it constitutes a single, integrated contract, not a collection of separate documents. The agreement uses continuous pagination from page "1 of 5" to page "5 of 5." *See* ER-22. That continuity supports the straightforward inference that the parties intended the document to be read as a unified whole, with each page forming part of a single, complete agreement rather than independent or selectively incorporated terms. Indeed, Finelite concedes as much; it contests only the *degree* of incorporation of the Contract of Sale, not that the Contract of Sale was not incorporated at all. *See* Finelite Op. Br. 4; Finelite Reply Br. 13; *id.* at 1 ("The only terms of sale that became part of the Credit Agreement were 'to pay service charges assessed and to pay reasonable attorneys [sic] fees in the event of default.'").

Second, the 2012 Agreement's plain language supports complete integration of the Contract of Sale. While Finelite argues that the disputed statement on page 2 incorporated only two aspects of the Contract of Sale on pages 4 and 5, the disputed statements express reference to the Contract

of Sale shows otherwise. The disputed statement recites the following:

> Applicant understands and agrees to Samsung Semiconductor, Inc.'s terms of sale (attached), to pay service charges assessed and to pay reasonable attorneys [sic] fees in the event of default.

*Id.* at ER-140. As an initial matter, the parties agree that the "terms of sale" are those terms and conditions contained on pages 4 and 5 in the Contract of Sale. *See* Finelite Op. Br. 4; Samsung Reply Br. 16. Further, the "terms of sale" are expressly "attached" or included on pages 4 and 5 of the 2012 Agreement. The dispute therefore turns on whether the "terms of sale (attached)" (*i.e.*, the Contract of Sale) are fully incorporated into the 2012 Agreement.

Finelite contends, primarily using grammar principles, that the disputed statement incorporated only two aspects of the terms of sale on pages 4 and 5. Under its view, it breaks the sentence into two parts. It interprets the first part—"Applicant understands and agrees to Samsung Semiconductor, Inc.'s terms of sale (attached)"—as the main clause. Finelite Op. Br. 27–8. It then contends that the second half—"to pay service charges assessed and to pay reasonable attorneys [sic] fees in the event of default"—is a limitation on the main clause and specifically limits the incorporation of the "terms of sale" to only those sections on pages 4 and 5 relating to "service charges" and "attorneys [sic] fees." *Id.* This is an incorrect reading of the 2012 Agreement.

Finelite's narrow reading lacks textual support and distorts the 2012 Agreement's language. The disputed statement is best read as a list or series of obligations, not a grant followed by limitations. Notwithstanding the omission of the Oxford comma, which is insignificant, *see United States v. Bass*, 404 U.S. 336, 340 n.6 (1971) ("[We] will not attach significance to an omitted [Oxford] comma."), the

comma placement and use of "and" in the disputed statement reflect a series in which Finelite agreed to multiple items, including all "terms of sale." *See, e.g.*, W*hitman v. Transtate Title Co.*, 165 Cal. App. 3d 312, 319 (1985) ("Grammatically, the three situations, separated by commas, constitute a series.").

Finelite's view also assumes that the disputed statement's limited incorporation of only "service charges" and "attorneys [sic] fees" have corresponding sections in the "terms of sale" on pages 4 and 5 such that a partial incorporation would be readily apparent. *See* Finelite Op. Br. 13–14, 38–39. That assumption does not hold. Finelite purports that the term "service charges" refers to "late charges" on page 4, but the discussion of "late charges" appears in the middle of a dense paragraph titled "Prices and Payment," *see* ER-142 § 7, and Finelite provides no good reason why one term maps on the other. Rather, the only reasonable interpretation of the term "service charges" in the disputed statement is that it refers back to the same term earlier on the same page. *See* ER-140 ¶ 3 ("A monthly service charge . . . *can* be assessed to all accounts." (emphasis added)). Thus, the earlier use of "service charge" is used in the context of what Samsung *can* assess to Finelite, and the later use of "service charge" in the disputed statement on the same page shows that Finelite *agreed* to pay such charges if Samsung assessed them.

Finelite's attorney fees argument fares no better. It assumes that "reasonable attorneys [sic] fees" in the disputed statement on page 2 selectively incorporates the "collection costs" provision on page 4 of the Contract of Sale. *See* Finelite Op. Br. 13–14. But that premise is flawed: attorney fees are not synonymous with collection costs. Indeed, page 4 treats them as not coextensive. *See* ER-142 § 7 ("collection costs (including attorneys' fees . . .)"). Reading the page 2 reference to attorney fees as incorporating a different, broader concept on page 4 is therefore untenable.

Finelite's interpretation must also be rejected because it would impermissibly render substantial portions of the 2012 Agreement superfluous. *See Flores v. Barr*, 934 F.3d 910, 915 (9th Cir. 2019) ("Courts interpreting the language of contracts 'should give effect to every provision,' and 'an interpretation which renders part of the instrument to be surplusage should be avoided.'" (quoting *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 12 (1989)). As the district court aptly explained, excising most of pages 4 and 5 "would result in nearly half of the 2012 Agreement as surplusage." *Decision*, 694 F.Supp.3d at 1210. That cannot be.

Nor can Finelite salvage its position by invoking the parties' course of performance under the Cal. Comm. Code § 2207. That argument improperly relies on parol evidence not to interpret the contract's language, but to displace it altogether, an outcome California law does not permit. *See Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1174 (2013) (The Parol Evidence Rule "provides that when parties enter [into] an integrated written agreement, extrinsic evidence may not be relied upon to alter or add to the terms of the writing."). Routine exchanges of Purchase Orders and acknowledgments—none signed as required for modification, *see* ER-143 § 11—are parol evidence that cannot override the 2012 Agreement or its modification provisions contained in the Contract of Sale.

Accordingly, we conclude that the 2012 Agreement unambiguously incorporates the Contract of Sale in its entirety. In light of that conclusion and because there is no dispute that the 2012 Agreement was in effect during the relevant purchase periods, *see* Finelite Op. Br. 20 (implicitly conceding this point), we need not reach Finelite's remaining UCC § 2207 arguments. As a result, because the 2012 Agreement's indemnification clause applies, the district court did not err in dismissing Finelite's breach of

contract, breach of warranty, and declaratory judgment claims.

## CONCLUSION

We have considered Finelite's remaining arguments but find them unpersuasive. For the foregoing reasons, we *affirm*.

**AFFIRMED**